**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-30185

INDUSTRIAS MAGROMER CUEROS Y PIELES S.A.,                     Plaintiff - Appellee,

versus

LOUISIANA BAYOU FURS INC., ET AL.,                     Defendants,

LOUISIANA BAYOU FURS INC.,
WILLIAM L. BERRY,                     Defendants - Appellants.

Appeal from the United States District Court
for the Eastern District of Louisiana

June 24, 2002

Before JONES, EMILIO M. GARZA,  and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Louisiana Bayou Furs, Inc. ("Bayou Furs") and William L. Berry ("Berry") appeal from the

district court's denial of their motion for judgment as a matter of law, or in the alternative, motion

for a new trial.  They also appeal the court's grant of judgment as a matter of law for Industrias

Magromer Cueros y Pieles S.A. ("Industrias") on its *force majeure* defense.  For the following

reasons, we AFFIRM in part and REVERSE in part.

1

FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from a contract for the sale of unprocessed nutria skins. On November 12, 1997, Industrias entered into an agreement with Bayou Furs to purchase 200,000 nutria skins (the "Nutria Agreement"). Industrias is an Argentinian company which is a "dominant force" in the world market for nutria coats and products. During the relevant time period, Bayou Furs was a closely-held Louisiana corporation in the business of buying nutria pelts and other furs from Louisiana trappers and reselling them in national and international markets.[1]

Prior to 1997, Industrias routinely purchased pelts directly from Louisiana trappers. In June of 1997, Industrias representatives were introduced to Bayou Furs as a potential bulk supplier of fur pelts. In September of 1997, Irving Camlot ("Camlot"), President of Bayou Furs, informed Industrias that Bayou Furs was prepared to provide a substantial amount of nutrias skins. Leonardo Grozovsky ("Leonardo"), President of Industrias, and his son Frederico Grozovsky ("Frederico"), Managing Director of Industrias, invited Camlot to visit Industrias's facilities in Argentina and to discuss a possible future business relationship. Camlot accepted the invitation and traveled to Argentina with Jimmy Goode, a buyer and grader employed by Bayou Furs, and Berry, chairman of Bayou Furs's board of directors and the Director of Wetland Management for Louisiana Land & Exploration Company ("LL&E"). [2]

While in Argentina, Camlot and Berry negotiated the Nutria Agreement with Leonardo and

---

[1] Bayou Furs was incorporated in 1995. It was formed by a group of Louisiana landowners, including Louisiana Land & Exploration Company, in an attempt to gain control of the market for Louisiana furs. Bayou Furs's business plan was to purchase furs from Louisiana trappers thereby consolidating the supply of such furs and reselling the furs for a profit.

[2] Berry acted as LL&E's representative on Bayou Furs's board of directors.

2

Frederico. Nestor Molczadzki ("Molczadzki"), an Industrias employee with years of experience in grading pelts, also attended the negotiations. Berry introduced himself as the chairman of Bayou Furs's board of directors and director of LL&E's Office of Wetland Management. Berry described LL&E as one of the largest landowners in Louisiana. According to Industrias, Berry was the dominant figure in the negotiations, and repeatedly emphasized LL&E's connection with Bayou Furs and its support for the Nutria Agreement. Bayou Furs and Berry contend that he was merely a bystander to the contract negotiations and that Camlot negotiated the agreement for Bayou Furs.

During the negotiation of the Nutria Agreement, Industrias informed Camlot and Berry that it required 200,000 nutria pelts for its winter and spring production requirements. Camlot and Berry represented that Bayou Furs could timely deliver the required pelts. Industrias alleges that it expressed concerns about dealing with the newly formed Bayou Furs, and that Berry represented that there was no need for concern because LL&E stood behind Bayou Furs's agreement. The parties prepared a written agreement in Industrias's office, and the Nutria Agreement was executed on November 12, 1997. The Nutria Agreement was signed by Camlot for Bayou Furs, Leonardo for Industrias, and also by Berry, Frederico, Molczadzki, and Maximilian Forman.

The Nutria Agreement provided that Bayou Furs would supply 100,000 nutria skins by February 15, 1998. Industrias was obligated to pay $7.90 per pelt for the highest grade pelts, and lesser amounts for lower grade pelts. Under the terms of the Nutria Agreement, Industrias provided a $703,000 letter of credit in favor of Bayou Furs as consideration for the first 100,000 pelts. The agreement provided for Industrias's right to inspect and grade the skins prior to acceptance. Upon acceptance of the skins, Industrias was obligated to provide a certificate of inspection, which entitled Bayou Furs to draw from the letter of credit. The agreement also provided for the sale of another

3

100,000 skins at a later date.

In December of 1997, Molczadzki traveled to Bayou Furs's warehouse at Sicily Island, Louisiana to inspect and grade 20,000 of the first 100,000 nutria skins. Bayou Furs contends that Molczadzki spent two weeks improperly downgrading the skins. Camlot informed Molczadzki that Bayou Furs would not sell the skins to Industrias on the basis of the improper downgrading, and told Molczadzki to return to Argentina. After learning of the dispute, Frederico joined Molczadzki in Louisiana in an attempt to secure delivery. Frederico and Molczadzki contacted Berry to urge Bayou Furs's compliance with the terms of the Nutria Agreement. Berry refused to intervene with Camlot's decision. Subsequently, Bayou Furs sold the pelts one week later to another buyer for forty percent more than the price agreed on in the Nutria Agreement.

On July 8, 1998, Industrias filed suit in federal court against Bayou Furs, Camlot, Berry and several of Bayou Furs's shareholders alleging (1) breach of contract, (2) violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), (3) detrimental reliance, (4) intentional misrepresentation, and (5) negligent misrepresentation. Industrias dismissed all claims against Camlot and Bayou Furs's shareholders prior to trial.

In pre-trial proceedings, Industrias moved to add Berry's employer, LL&E, as a party-defendant. The parties reached an agreement whereby LL&E would not be added as a defendant on the basis of LL&E's agreement to provide a Letter of Undertaking indemnifying Berry for any judgment rendered against him on Industrias's claims (up to $5,000,000). The Letter of Undertaking also provided that Industrias was prohibited from bringing the indemnity agreement to the jury's attention unless Berry placed his ability to pay a judgment at issue.

The case was tried before a jury in five days. Bayou Furs and Berry moved for judgment as

4

a matter of law at the close of Industrias's case arguing that there was insufficient evidence to demonstrate (1) a violation of LUTPA, (2) a breach of contract for failure to sell the second 100,000 skins, (3) bad faith, and (4) intentional misrepresentation. The court denied the motion. Industrias also moved for judgment as a matter of law asserting that there was undisputed evidence that Bayou Furs's failure to perform under the contract had nothing to do with *force majeure*. Based on Camlot's judicial admission that the supply of nutrias had nothing to do with poor weather conditions in Louisiana, the court granted the motion. The jury found that (1) a breach of contract occurred, (2) Berry was not personally obligated to perform the contract, (3) Bayou Furs and Berry violated LUTPA, (4) Industrias detrimentally relied on representations made by Bayou Furs and Berry, (5) Bayou Furs and Berry intentionally misrepresented material facts when negotiating and executing the contract, but they did not do so with an intent to obtain an unjust advantage or to cause a loss or inconvenience to Industrias, (6) Bayou Furs and Berry did not make any negligent misrepresentations to Industrias, and (7) Bayou Furs and Berry acted in bad faith. On the basis of the jury's factual findings, the district court entered judgment against Bayou Furs for breach of the Nutria Agreement, and against Bayou Furs and Berry for violations of LUTPA and detrimental reliance. The court entered judgment against Bayou Furs and Berry, jointly and severally, in the amount of $3,465,350.

Bayou Furs and Berry renewed their motion for judgment as a matter of law or, in the alternative, a new trial. The motion was denied. Bayou Furs and Berry now appeal, arguing that they are entitled to judgment as a matter of law or, alternatively, a new trial. They assert that there was insufficient evidence adduced to support Industrias's claim of (1) a LUTPA violation, (2) detrimental reliance, (3) bad faith, and (4) breach of contract on the second 100,000 skins. They also assert that the court erred in holding that *force majeure* was inapplicable. Further, they contend that the

5

damages awarded were excessive and that Berry should not be required to pay more than twenty six percent of the damages– the percentage of fault that they assert the jury assigned to him. Lastly, they maintain that the district court erred by allowing Industrias to refer to the indemnity agreement.

I.    Standard of Review for Judgment as a Matter of Law and for Granting a New Trial

We review *de novo* a district court's grant or denial of a motion for judgment as a matter of law. Stokes v. Emerson Elec. Co., 217 F.3d 353, 356 (5th Cir. 2000). Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." FED. R. CIV. P. 50(a). Reviewing all of the evidence in the record, a "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). In so doing, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151.

At the outset, we note that the instant action was tried by a jury and that it is the function of the jury to weigh evidence. Treadaway v. Societe Anonyme Louis-Dreyfus, 894 F.2d 161, 164 (5th Cir. 1990). Attributing weight to conflicting evidence, and drawing inferences from such evidence, are within the province of the jury and its decision should be given deference if the record contains any competent evidence to support its findings. Gibralter Sav. v. LD Brinkman Corp., 860 F.2d 1275, 1297 (5th Cir. 1988). We have found that the evidence in the record can support a jury verdict if it is "of such quality and weight that reasonable and fair-minded [individuals] in the exercise of impartial judgment might reach different conclusions." Transoil (Jersey) Ltd. v. Belcher Oil Co., 950 F.2d 1115, 1118 (5th Cir. 1992).

With respect to Bayou Furs and Berry's request for a new trial under Federal Rule of Civil

6

Procedure 59, a trial judge's ruling on a motion for new trial is reviewed for an abuse of discretion. Bailey v. Daniel, 967 F.2d 178, 179-80 (5th Cir. 1992). This standard of review is somewhat narrower when a new trial is denied and so mewhat broader when a new trial is granted. Jones v. Wal-Mart Stores, Inc., 870 F.2d 982, 986 (5th Cir. 1989). With these principles guiding us, we address the majority of the issues involved in this appeal.

## II. Agency

Berry argues that he cannot be liable, as a matter of law, for a LUTPA violation or for Industrias's detrimental reliance claim. He avers that he is protected by his capacity as a disclosed agent. Industrias asserts that Berry waived this defense because it was not raised prior to Berry's Rule 50 motion. Industrias further argues that Berry conceded that he could be found liable for these claims in pre-trial pleadings. Berry counters that he did raise the defense in his answer and summary judgment motion. Berry further explains that he did not pursue the defense at trial because Industrias conceded in pre-trial pleadings that its claims against him were in the nature of principal liability.[3] Thus, Berry argues, until the jury found that he was not personally liable as a co-obligor on the contract, his agency defense did not become relevant.

The district court found that Berry waived any capacity defense because he failed to raise the issue prior to the Rule 50 motion. However, Berry did raise the issue at several junctures prior to the Rule 50 motion. In Berry's answer, he asserted the defense that he was "working as [an] agent[] for Louisiana Bayou, and that . . . [he] is [not] personally liable for any debts incurred." Moreover,

---

[3] Industrias's response to Berry's motion for summary judgment states that it sought to hold him liable on the contract in his personal capacity. Industrias goes on to assert that "[t]he issue of Mr. Berry's principal liability under the relevant contract . . . presents a classic example of a genuine issue of material fact." Thus, Industrias pursued Berry personally and, as such, he did not assert a capacity defense during the trial.

7

in his motion for summary judgment, he raised a capacity defense to all claims. He argued that any fault on the part of an agent for failing to fulfill a contract is chargeable to his principal and not to himself, as an agent. Not only did Berry raise the defense in his answer and motion for summary judgment, the original pre-trial order filed in June of 2000, and the modified pre-trial order filed in December of 2000, both state that, during the contract's negotiation, Berry "act[ed] at all times as [a] representative[] of [Bayou Furs]."

A pre-trial order normally governs the issues to be litigated at trial. McGehee v. Certainteed Corp., 101 F.3d 1078, 1080 (5th Cir. 1996) ("It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." (citation omitted)). However, in a pre-trial memorandum filed the same day as the modified pre-trial order, Berry "concede[d] that [he] could be personally liable under theories of detrimental reliance." While the pre-trial order governs the issues to be litigated at trial, and supersedes any prior filings, it does not trump Berry's very specific concession in the pre-trial memorandum regarding the possibility of personal liability on the detrimental reliance claim.

On the other hand, Berry did not similarly concede that he could be liable for a LUTPA violation. Instead, he stated in the same pre-trial memorandum that "the defendants concede that were Mr. Berry found to have obligated himself personally [on the contract,] he could [be] liable under all causes of action alleged, but also contend, on the other hand, that if no predicate breach is found, Mr. Berry cannot be found liable for any contract based causes of action, including . . . [LUTPA]."

Based on the fact that (1) Berry raised a capacity defense to the LUTPA claim in his answer and summary judgment motion, (2) the defense was preserved in the pre-trial order, and (3) the

8

defense was not waived in the pre-trial memorandum in a similar vein to the waiver regarding detrimental reliance, we conclude that the district court erred in finding that he was not entitled to this defense.

Turning to the merits of the defense, we first note that Berry's statement in the pre-trial memorandum regarding his liability for a LUTPA claim is consistent with his theory that capacity did not become relevant until the jury found he was not personally liable on the contract. When the interrogatories were presented to the jury, two separate questions were asked. First, whether Berry personally obligated himself on the contract (the "Personal Obligation Interrogatory"), a question to which the jury answered "no." Second, whether Berry engaged in unfair or deceptive acts or practices in the conduct of trade or commerce (the "LUTPA Interrogatory"), a question to which the jury answered "yes." Because the jury answered "no" to the Personal Obligation Interrogatory, we agree with Berry's assertion that he was acting as an agent when the contract negotiations took place.

Generally, unless directors or officers of a corporation purport to bind themselves individually, they do not incur personal liability for the debts of a corporation. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164, 1168-69 (La. 1991) (citation omitted). The exception to this rule is when there is a justification for piercing the corporate veil. Id. at 1168. Under Louisiana law, there are two situations where the corporate veil may be pierced. One is where the formalities of corporate existence are disregarded to the point where the affairs of the corporation are indistinguishable from the affairs of the officer. Egudin v. Carriage Court Condominium, Dehrvill Group, Inc., 528 So.2d 1043, 1046-47 (La. Ct. App. 1988). The other, which applies in this case, is where an officer commits fraud, malfeasance, or criminal wrongdoing in the name of the corporation. Id. at 1047; Riggins, 590 So.2d at 1168. Industrias has not alleged any criminal wrongdoing. Therefore, Berry

9

can only be liable if he committed fraud or malfeasance. Fraud is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." LA. CIV. CODE. ANN. art. 1953 (West 1987). The Louisiana courts have not defined malfeasance in the context of piercing the corporate veil. However, Black's Law Dictionary defines it as a "wrongful or unlawful act." BLACK'S LAW DICTIONARY 698 (7th ed. 1999). In the instant action, the jury specifically found that although Berry misrepresented material facts, he did not do so "with the intention either to obtain an unjust advantage over Industrias or to cause a loss or inconvenience to Industrias." Thus, Berry did not commit fraud in the eyes of the jury. The jury did, however, find that Berry acted in bad faith. Nevertheless, under Louisiana law, only "exceptional circumstances warrant the radical remedy" of piercing the corporate veil. Korson v. Indep. Mall I, Ltd., 593 So. 2d 981, 984 (5th Cir. 1992) (citing Landry v. St. Charles Inn, Inc., 446 So. 2d 1246, 1251 (La. Ct. App. 1984)). As such, Berry's actions, as a matter of law, do not warrant piercing the corporate veil. In sum, because the jury found that Berry was not acting in his personal capacity, and because he is protected from LUTPA liability by his status as an agent, the district court improperly denied judgment as a matter of law on this issue.

### III.    Detrimental Reliance

Bayou Furs and Berry contend that there is insufficient evidence to support the jury's finding of detrimental reliance by Industrias. They also argue that the court erred by submitting the following question to the jury: "Did any of the following defendants represent to Industrias that [Bayou Furs] would fully perform the terms of the November 12, 1997 contract?" They assert that this question seeks to transform a binding contractual promise into a representation upon which the detrimental reliance claim is based. They further argue that detrimental reliance applies only when a party makes

10

a representation contrary to, instead of consistent with, prior contractual promises.

A.    Sufficiency of the Evidence on the Detrimental Reliance Claim

Bayou Furs and Berry did not raise the issue of the sufficiency of the evidence on the detrimental reliance claim in their Rule 50 motion. Thus, the issue is being raised for the first time on appeal. Issues raised for the first time on appeal are reviewed only for plain error. Shipman v. Central Gulf Lines, Inc., 709 F.2d 383, 388 (5th Cir. 1983). Under this standard, we will reverse only if the judgment complained of results in a "manifest miscarriage of justice." Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978). Thus, the question becomes not whether there was substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict. Id. After reviewing the record, we conclude that there was evidence from which a reasonable jury could conclude that Bayou Furs and Berry made various misrepresentations inducing Industrias into the contractual relationship and inducing Industrias's reliance on Bayou Furs for all of its nutria needs.

B.    Jury Question on Detrimental Reliance

Our standard of review for challenged jury instructions is two-prong. First, the challenger must demonstrate that the charge creates substantial doubt as to whether the jury was properly guided in its deliberations. Hartsell v. Dr. Pepper Bottling Co., 207 F.3d 269, 273 (5th Cir. 2000). Second, even if the jury instructions were erroneous, we will not reverse if we determine that the challenged instruction could not have affected the outcome of the case. Id. We find that the jury was instructed properly.

Bayou Furs and Berry cite no authority for the proposition that detrimental reliance could not be based on statements also made in a binding contract. The district court determined that Industrias

11

had proven the facts required by article 1967 of the Louisiana Civil Code for imposition of detrimental reliance liability: (1) that Bayou Furs and Berry made promises, (2) that Industrias's reliance on the representation was reasonable, and (3) that Industrias's reliance caused a change in position to its detriment. See LA CIV. CODE ANN. art. 1967 (West 1987). We agree with the district court and conclude that judgment as a matter of law was properly denied as to this claim.

## IV. LUTPA

Bayou Furs and Berry contend that they are entitled to judgment as a matter of law on the LUTPA claim because there is insufficient evidence that Bayou Furs and Berry are Industrias's "competitors" as required to find a party liable under LUTPA. They also contend that the evidence is insufficient to support a finding that Bayou Furs and Berry engaged in the type of "egregious" conduct that forms the basis of a LUTPA violation. They argue that the finding of LUTPA liability is inconsistent with the jury's later finding that they did not act with the intention to obtain an unjust advantage over Industrias. Because we have already found that Berry is entitled to judgment as a matter of law on the LUTPA claim due to his agency status, we will only address Bayou Furs's arguments.

The district court rejected both arguments asserted by Bayou Furs. With regard to the argument that Bayou Furs is not a competitor, the court correctly pointed out that Camlot testified that Industrias was not only a customer, but a competitor with Bayou Furs in the "international market."

Turning to the argument that Bayou Furs's actions were not sufficiently egregious to justify the imposition of LUTPA liability, the district court found that LUTPA does not require a misrepresentation or unethical conduct to be engaged in with the intent to obtain an unjust advantage

12

or to cause a loss or inconvenience. We agree. LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. ANN. § 51:1405(A) (West 1987). The statute merely requires a showing of "some element of fraud, misrepresentation, deception or other unethical conduct on [a] defendant's part." Marshall v. Citicorp Mortgage, Inc., 601 So. 2d 669, 670 (La. Ct. App. 1992) (citation omitted). Because LUTPA does not require an intent to obtain an advantage or to cause a loss, there is no inconsistency in the jury verdict. See Willard v. The John Hayward, 577 F.2d 1009, 1011 (5th Cir. 1978) (explaining that a jury's answers should only be considered inconsistent when "there is no way to reconcile them."). The jury could have found Berry's representations, on behalf of Bayou Furs, that the contract was backed by LL&E, and the refusal of Bayou Furs to perform under the contract due to changed market conditions, unethical. Accordingly, the district court correctly denied Bayou Furs's motion for judgment as a matter of law on the LUTPA claim.

## V. Bad Faith

Bayou Furs and Berry challenge the jury's finding that they acted in bad faith by arguing that bad faith requires a finding of "intentional *and* malicious conduct." They assert that the district court confused the jury by substituting the word "or" for "and" in three of its five references to the elements of bad faith when reading the charge to the jury. They also argue that the jury's finding of bad faith is inconsistent with its earlier finding that the misrepresentations of Bayou Furs and Berry were not made with "an intent to obtain an unjust advantage or to cause a loss or inconvenience to Industrias."

The district court rejected the challenge to the bad faith finding. The court determined that the evidence regarding Bayou Furs's improper downgrading excuse could rationally support a finding that it acted in bad faith. The instruction requested by Bayou Furs and Berry asked that the jury be

13

charged that bad faith requires an "intentional or malicious failure to perform." They cannot now complain about this language in the charge. Further, since neither Bayou Furs or Berry objected to the charge, we apply the plain error standard of review. Russell v. Plano Bank & Trust, 130 F.3d 715, 721 (5th Cir. 1997). We find no plain error in the charge.

In Louisiana, "an obligor [who acts] in bad faith is liable for all . . . damages, foreseeable or not, that are a direct consequence of his failure to perform." Bond v. Broadway, 607 So. 2d 865, 867 (La. Ct. App. 1992) (citing LA. CIV. CODE ANN. art. 1997 (West 1987)). Bond defined bad faith as follows:

> The opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive.
>
> The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.

Id. (citations omitted). Based on this definition, there is evidence upon which a reasonable jury could conclude that Bayou Furs and Berry acted in bad faith. A reasonable jury could have rejected the testimony regarding Molczadzki's unreasonable downgrading and found that Bayou Furs and Berry acted with "dishonest or morally questionable motives." We therefore conclude that the district court was correct in denying judgment as a matter of law on the jury's finding of bad faith.

VI.     Breach of Contract

Bayou Furs next argues that it did not breach the Nutria Agreement because Industrias unreasonably downgraded the nutria skins. Industrias counters that extensive evidence regarding the alleged improper downgrading was presented and the jury rejected the testimony, finding that Bayou Furs did not have any justifiable reason to excuse performance under the Nutria Agreement.

14

Bayou Furs's argument was not presented in its Rule 50 motion. When a party has not moved for judgment as a matter of law, we review its challenge to evidentiary sufficiency only for plain error. McCann v. Tex. City Refining, Inc., 984 F.2d 667, 673 (5th Cir. 1993) (citation omitted). "In other words, this Court will reverse only if the judgment complained of results in a manifest miscarriage of justice." United States ex rel. Wallace v. Flintco Inc., 143 F.3d 955, 963-64 (5th Cir. 1998) (quoting McCann, 984 F.2d at 673) (internal quotation marks omitted). Under plain-error review, the inquiry is whether the plaintiff has presented any evidence in support of its claim. Bayou Furs has not demonstrated that the jury's findings in this regard constitute plain error as there is evidence to support the jury's determination.

## VII.    *Force Majeure*

Bayou Furs and Berry assert that the district court erred in granting Industrias's Rule 50 motion on Bayou Furs's *force majeure* defense. They assert that weather conditions prevented them from performing under the contract and the district court improperly took this defense out of the hands of the jury.

"*Force majeure* is defined as a providential occurrence or extraordinary manifestation of the forces of nature which could not have been foreseen and the effect thereof avoided by the exercise of reasonable prudence, diligence, and care or by the use of those means which the situation renders reasonable to employ." Eubanks v. Bayou D'Arbonne Lake Watershed Dist., 742 So. 2d 113, 119 (La. Ct. App. 1999). The district court based its decision on Camlot's testimony that weather conditions had nothing to do with the non-delivery of the nutria skins. The court noted that Camlot testified that the only reason the skins were not delivered was the grading problem between the parties. Camlot's candid judicial admission foreclosed any argument regarding *force majeure*.

15

Therefore, we affirm the district court's decision to grant judgment as a matter of law as to this issue.

VIII.    The Second 100,000 Skins

Bayou Furs and Berry next contend that the district court erred in instructing the jury that the Nutria Agreement was a contract for the sale of 200,000 nutria skins. They argue that the parties reached an agreement for the price of the first 100,000 skins, but no price was set for the sale of the second 100,000 skins. They further assert that the record supports the view that they did not intend to be bound unless a price could be agreed upon.

The district court rejected this argument on the basis that there was overwhelming evidence that the price for the second 100,000 skins was to be set by the market and that the market price was an ascertainable measure. A contract for the sale of goods that does not set a price is enforceable if the price is to be the "reasonable price at the time and place of delivery. If there is an exchange or market for such things, the quotations or price lists of the place of delivery or, in their absence, those of the nearest market, are a basis for the determination of a reasonable price." LA. CIV. CODE ANN. art. 2466 (West 1996). "Nevertheless, if the parties intend not to be bound unless a price be agreed on, there is no contract without such an agreement." Id.

The contract provides that

the additional 100,000 skins price will be determined and agreed upon prior to the completion of delivery of the [first] 100,000 skins . . . it is the idea to discuss the price for the remaining 100,000 skins on or about January 15th, 1998

****

if both parties can not [sic] agree on price for the second 100,000 skins seller is free to sell to any one [sic] including Argentina.

When a party challenging a jury instruction does not object, as is the case here, we apply the

16

plain error standard of review. Russell, 130 F.3d at 721. At trial, Frederico testified that the price for the second 100,000 skins was to be set by the market. Camlot testified that there was a determinable market price for the second skins. Based on this, we find no plain error in the court's instruction.

## IX.    Evidence of Indemnification

Berry contends that the district court erred by allowing Industrias to question him about his indemnity agreement with LL&E and by referring to the agreement during closing arguments. Evidentiary rulings are affirmed unless the district court abused its discretion and a substantial right of the complaining party was affected. United States v. Asibor, 109 F.3d 1023, 1032 (5th Cir. 1997).

During his opening statement, Berry's counsel described him as a man "accused of betting his retirement on nutria skins." Berry asserts that he was simply trying to illustrate the fallacy in Industrias's argument that he took on personal responsibility for the contract by arguing that no sensible person would obligate themselves on a contract with so much to lose and nothing to gain. He contends that his economic risk in obligating himself on a contract is completely independent from his ability to pay the judgment. The district court disagreed, finding that the repeated references to Berry's "jeopardizing his retirement" during counsel's opening statement specifically raised the issue and opened the door for opposing counsel to question him accordingly. The court also instructed the jury that the evidence was only admitted for the purpose of impeachment and not to determine liability or damages. The court issued a proper limiting instruction and we cannot find an abuse of discretion or an affect on a substantial right justifying a new trial. Therefore, we conclude that Berry is not entitled to a new trial on this basis.

## X.    Damages

17

In reviewing a jury award, we are reviewing the district court's denial of a motion for a new trial. Concise Oil & Gas P'ship v. La. Intrastate Gas Corp., 986 F.2d 1463, 1475 (5th Cir. 1993). Because the district court has a wide range of discretion in acting on such motions, the standard of review is abuse of discretion. Sam's Style Shop v. Cosmos Broad. Corp., 694 F.2d 998, 1006 (5th Cir. 1982). "[T]here is no such abuse of discretion unless there is a complete absence of evidence to support the verdict." Id. A jury award is entitled to great deference and should not be disturbed unless it is entirely disproportionate to the injury sustained. Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983).

Bayou Furs and Berry seek a new trial on the issue of damages. The court rejected their motion for a new trial, finding that it was primarily an objection to the testimony of Industrias's damages expert. Determinations about witness credibility fall within the province of the jury, and the district court properly refused to disturb the award on this basis.

Bayou Furs and Berry also contend that the district court erred by failing to include a mitigation interrogatory in the verdict form. However, the district court did include an instruction on mitigation. Moreover, there was ample evidence in the trial record demonstrating Industrias's attempts to mitigate, including testimony by Frederico and Leonardo that they attempted to obtain the skins from other suppliers but were unsuccessful. Bayou Furs and Berry cite no authority supporting their argument that the court's failure to offer a specific question, as opposed to a jury instruction, on mitigation constitutes reversible error. Therefore, we refuse to grant a new trial on this ground.

Finally, Industrias's expert calculated that it suffered $4,683,090 in damages. The jury found that Industrias suffered $3,465,350 in damages. It also found that Industrias and Berry were each

18

twenty six percent responsible for the damages suffered, while Bayou Furs was forty eight percent at fault. Bayou Furs and Berry assert that the court erred in not reducing the award by the twenty six percent attributable to Industrias. Industrias argues that Louisiana law does not allow comparative fault allocation for detrimental reliance and LUTPA damages.

Industrias is correct that Louisiana law does not allow comparative fault allocations on detrimental reliance and LUTPA claims. See LA. CIV. CODE ANN. art. 2323 (West 1997).[4] Accordingly, during an extensive jury charge conference, the parties and the district court agreed that if the jury found liability on either the detrimental reliance or LUTPA claims, the award would not be reduced. On the other hand, if the jury had found Bayou Furs and Berry liable for the breach of contract claim alone, then the court was to reduce the award by the percentage of fault allocated to Industrias. Because the jury found liability on the detrimental reliance and LUTPA claims, the court correctly refused to reduce the jury award. See art. 2323.

Finally, we note that the jury returned a $3,465,350 general damages verdict in response to all of the claims for which it found Bayou Furs and Berry liable. Accordingly, the district court's judgment found that Bayou Furs and Berry were liable for the damages jointly and *in solido*. See LA. CIV. CODE ANN. art. 2324 (West 1997). "The principal effect of imposing solidary liability among co-tortfeasors is that *any* tortfeasor may be compelled to pay the *entire* judgment." Touchard v. Williams, 671 So. 2d 1065, 1068 (La. Ct. App. 1996). As such, the fact that we have granted judgment as a matter of law for Berry on the LUTPA claim does not affect the judgment or his

---

[4] Article 2323 provides that "if a person suffers . . . loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced." See also Fromenthal v. Delta Wells Surveyors, 776 So. 2d 1, 17 (La. Ct. App. 2000) ("The comparative fault of a plaintiff in a tort action is governed by [Article] 2323.").

19

liability for the damages.

## CONCLUSION

The district court did not abuse its discretion by allowing admission of the indemnity agreement for impeachment purposes. Berry waived his capacity defense to the detrimental reliance claim. However, he did not waive his capacity defense to the LUTPA claim and is entitled to judgment as a matter of law on that claim. The jury's verdict on all other claims is supported by sufficient evidence, and the motions for judgment as a matter of law, or in the alternative for a new trial, as to LUTPA, detrimental reliance, bad faith, and breach of contract on the second 100,000 skins, were properly denied. We also affirm the trial court's grant of judgment as a matter of law as to *force majeure*.

AFFIRMED in part and REVERSED in part.