United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 19, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-31276
_____

MARION HARRIS, Individually and as administratrix on behalf of
Cedric Harris Estate,

Plaintiff - Appellant,

versus

CITY OF SHREVEPORT; JUSTIN D OLDS, Individually and as an
employee of the City of Shreveport; GERALD FLETCHER,
Individually and as an employee of the City of Shreveport; STEVE
PRATOR, Individually and as an employee of the City of Shreveport,

Defendants - Appellees.

Appeal from the United States District Court
For the Western District of Louisiana
99-CV-1487

Before HIGGINBOTHAM, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Marion Harris appeals the outcome of her 42 U.S.C. § 1983 suit against the City of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Shreveport, Officer Justin Olds, Officer Gerald Fletcher, and Chief of Police Steve Prator (collectively, "the defendants"). The events surrounding the death of Harris's son, Cedric Harris ("the Decedent") gave rise to this suit. The Decedent was shot by Officer Olds during a struggle over the Decedent's gun after Olds stopped the Decedent for suspected traffic violations and frisked him for weapons.

Harris based her suit on violations of the Decedent's Fourth Amendment, Eighth Amendment, and Fourteenth Amendment rights, and she asserted claims under 42 U.S.C. §§ 1981 and 1985. She also pled several Louisiana state law claims: assault, battery, false imprisonment, negligence, wrongful death, loss of enjoyment of life, and violations of the Decedent's Louisiana constitutional rights.

The district court granted summary judgment on the issue of whether Olds's initial stop of the Decedent was permissible under the Fourth Amendment, ruling that the stop and frisk were legal. The issue of excessive force, however, was presented to a jury. At the close of Harris's evidence, the district court granted the defendants' FED. R. CIV. P. 50 motion to dismiss Harris's equal protection claim.

Ultimately, the jury concluded that Harris had failed to prove excessive force by a preponderance of the evidence. The district court entered a take-nothing judgment and dismissed Harris's remaining claims with prejudice. It also denied Harris's motion for judgment as a matter of law. Harris now appeals virtually every ruling made by the district court.

I

Harris first contests the district court's summary judgment ruling that Olds's stop and frisk of the Decedent were supported by probable cause. Olds stopped the Decedent and his companion, Melvin Robinson, after observing Robinson using a bicycle to tow the Decedent in a wheelchair.

-2-

Robinson and the Decedent were stopped in the middle of the street after dark, and Olds believed this activity violated various traffic regulations. Specifically, Olds thought the individuals were impeding traffic, *see* LA. REV. STAT. ANN. § 14:97, that the bike and/or wheelchair were being operated recklessly, *see* LA. REV. STAT. ANN. § 14:99, and that neither the bike nor the wheelchair had reflectors even though it was dark, *see* SHREVEPORT, LA., CODE OF ORDINANCES § 90-424.

We review a grant or denial of summary judgment *de novo*, using the same criteria employed by the district court. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001). Summary judgment is proper if, drawing all inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56(c).

Harris first argues the stop and pat-down were illegal because it is not clear that a wheelchair is a "means of conveyance" under Louisiana law, and thus LA. REV. STAT. ANN. § 14:99 was inapplicable. *See State v. Carr*, 761 So. 2d 1271 (La. 2000). We find this argument to be unpersuasive. In *Carr*, the Louisiana Supreme Court held LA. REV. STAT. ANN. § 14:98 to be ambiguous as to whether "other means of conveyance" included a bicycle, such that it did not provide adequate notice to the public that riding a bicycle while intoxicated was a criminal offense. Thus, the *Carr* court held, that "*for purposes of the charges at issue here* . . . 'other means of conveyance' under La. R.S. 14:98 A(1) does not include a bicycle." 761 So. 2d at 1276 (emphasis added).

Although the statute at issue in *Carr* uses the same "other means of conveyance" language at issue in this case, the *Carr* court did not conclusively define the term. In addition, *Carr* does not necessarily bear on whether Olds's interpretation of the statute could form the basis for a legal stop under the Fourth Amendment. Finally, *Carr* does not address the other statutes that might have

supported Olds's decision to stop Robinson and the Decedent. *See, e.g.*, LA. REV. STAT. ANN. § 32:194 (subjecting bicycles to all Louisiana traffic laws unless explicitly excepted by the statutory provision at issue); LA. REV. STAT. ANN. § 32:143 (listing the locations where it is illegal to stop or park a vehicle); *State v. Hunter*, 499 So. 2d 383, 385 (La. Ct. App. 1986) (holding that a violation of a traffic regulation by a cyclist constitutes probable cause to stop the cyclist).

Harris next contends that Olds did not present evidence at the summary judgment stage that he had a reasonable suspicion the Decedent was armed and dangerous, such that the frisk would be justified under *Terry v. Ohio*, 392 U.S. 1 (1968). This argument is dubious. In their summary judgment ruling, the defendants included Olds's sworn affidavit, which details the many reasons Olds believed the Decedent might be armed. The objective facts known to Olds about the Decedent are not contested by Harris and these facts support Olds's decision to frisk the Decedent for weapons. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Finally, Harris argues that the reasons given by Olds for the stop indicate that Robinson alone had violated traffic regulations and thus Olds exceeded the scope of the stop by releasing Robinson while detaining the Decedent. It appears that Harris first made this argument in her reply brief, nevertheless we will address it briefly. Harris is correct that not all of the statutory violations cited by defendants as the basis for the stop *necessarily* implicate the Decedent. Nonetheless, Olds stated in his affidavit that he believed Robinson and the Decedent were impeding traffic. This particular violation could easily apply to both individuals.

Overall, with regard to the legality of the stop and frisk, Harris has failed to show that the district court erred when it granted summary judgment or denied her motion for reconsideration.

II

Harris next argues that the district court erred when it denied her motion for judgment as a matter of law or, alternatively, a new trial. Although we review a district court's disposition of a motion for judgment as a matter of law *de novo*, such a motion should only be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find" for Olds on the issue of excessive force. *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 918 (5th Cir. 2002) (citing FED. R. CIV. P. 50(a)). We review the denial of a new trial motion for abuse of discretion, and will not reverse the district court unless there is "complete absence of evidence to support the jury verdict." *Id.* at 924.

Harris contends that the district court should have granted judgment as a matter of law because no reasonable jury could have found that the defendants satisfied the standard for use of deadly force articulated by the Supreme Court in *Tennessee v. Garner*, 471 U.S. 1 (1985). This argument ignores the evidence presented at trial.

Olds found a gun when he frisked the Decedent and the Decedent refused to release the it. While trying to secure the weapon, Olds and Fletcher became involved in a struggle with the Decedent. Olds then lost his grip on the gun and believed that the Decedent—who was lying face down on the pavement—had control of it and might shoot at Olds or Fletcher. It was at this point that Olds decided to employ deadly force. The Decedent's refusal to relinquish the gun and the ensuing struggle constituted an actual threat by the Decedent. *Cf. Carter v. Fenner*, 136 F.3d 1000, 1011 (5th Cir. 1998) (accepting jury verdict that deadly force was appropriate where suspect was unarmed but struggled and might have been reaching for someone else's weapon).

In addition, the defendants presented two experts on this issue. The first, a physical

-5-

rehabilitation physician, testified that the Decedent had the upper body strength to maneuver and shoot despite his disability. The second, a use of force expert, testified that Olds acted appropriately in using deadly force. Thus, when the evidence is viewed in the light most favorable to Olds, a reasonable jury could have easily found that no excessive force was used.

In the alternative, Harris contends a new trial is appropriate. She argues that the district court erred when it failed to instruct the jury on her state law claims of assault, battery, negligence, and excessive force.[1] We review timely challenges to jury instructions for abuse of discretion. We will reverse only if (1) the charge, on the whole, creates a substantial doubt as to whether the jury has been properly guided, and (2) the incorrect charge could have affected the outcome of the case. *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002).

Because the jury did not find excessive force, Harris has not shown that the district court's decision not to instruct the jury on the assault or battery claims was error. *See Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977); *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. Ct. App. 1982), *writ denied*, 430 So. 2d 75 (La. 1983). With regard to the negligence claim, a review of the record shows no evidence that Olds conducted the frisk in a negligent manner. Thus, it was

---

[1]Harris also argues that it was error to (1) use excessive force instructions instead of the specific deadly force elements set out in *Garner*; and (2) instruct the jury that injuries which result from the officer's use of force to overcome the suspect's resistance "do not involve constitutionally protected interests." She concedes, however, that she did not specifically make the first two objections during the charge conference. We review tardy objections for plain error, giving extreme deference to the district court. *Tompkins v. Cyr*, 202 F.3d 770, 783-84 (5th Cir. 2000). Error is plain only when it is clear or obvious and it affects the defendant's substantial rights. *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 1785 (2002).

There was no plain error in the instructions. The elements of excessive force stated to the jury were the exact elements listed in *Carter*, a Fifth Circuit case that also involved deadly force. *See* 136 F.3d at 1010. Harris's second objection is also meritless. The jury was told that the force must have been reasonable in light of the threat presented to the officers, so the applicable law was sufficiently clear.

not error to omit a negligence jury instruction. *See, e.g.*, *Roberts v. Wal-Mart Stores, Inc.*, 7 F.3d 1256, 1258 (5th Cir. 1998).

Although Harris contends that it was error for the district court to instruct the jury only on the elements of a federal excessive force claim, she has failed to show that Louisiana law is materially different from federal jurisprudence. Both the state and federal inquiry hinge upon whether the force used by the officer was objectively reasonable given the totality of the circumstances. *Compare Kyle*, 353 So. 2d at 973 *with Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997). Harris's chief complaint seems to be that several of the factors listed by the Louisiana Supreme Court in *Kyle* were not explicitly listed in the jury instructions. *See* 353 So. 2d at 973. But there is nothing in *Kyle* that mandates the use of every factor. *See LaBauve v. State*, 618 So. 2d 1187, 1191 (La. Ct. App. 1993).

Finally, Harris argues for a new trial because the composition of the jury allegedly denied her equal protection. Specifically, Harris contends it was "plain error" for the district court to deny her *Batson* challenge to the defendants' use of peremptory challenges against two black jurors and for the court to dismiss the last black juror for cause.[2]

When reviewing a district court's *Batson* analysis, we focus on (1) whether the side exercising the peremptory challenge articulated a race-neutral justification and (2) whether Harris has demonstrated that the justification was pretextual and that the defendants engaged in purposeful discrimination. *United States v. Montgomery*, 210 F.3d 446, 453-54 (5th Cir. 2000). Because a court's evaluation of a race-neutral justification depends on credibility assessments, we review the

---

[2]Harris did not clearly object to the district court's decision to remove juror number 38 at the time, and she has thus waived her right to object. *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 209 (5th Cir. 1992).

district court's decision for clear error. *Id.* Given the extremely deferential standard of review, we conclude that the district court did not err by allowing jurors number 24 and 34 to be stricken.[3]

For the foregoing reasons, we find that the district court properly granted summary judgment on the issue of the legality of the stop, properly granted the defendants' Rule 50 motion on the equal protection issue, properly denied Harris's motion for judgment as a matter of law on the excessive force issue, and pro perly dismissed Harris's remaining claims. We AFFIRM the district court's rulings in all respects.

---

[3]Harris also argues that the district court erred when it dismissed her equal protection claim and denied her motion in limine to exclude evidence relating to the cocaine found on the Decedent, as well as evidence of the Decedent's prior bad acts. We decline to address these arguments in detail because we find them to be wholly without merit. Likewise, Harris's notices of appeal list a number of specific claims that were not briefed, and thus are waived. *See United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000).