REVISED NOVEMBER 15, 2002

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-60425

_____

SANDRA FAY PHILLIPS, on Behalf of the Wrongful Death
Beneficiaries of Jonathan Phillips,

Plaintiff - Appellant,

versus

MONROE COUNTY, MISSISSIPPI; CHARLES FARMER, DR,
individually; JOHN BEARRY, individually,

Defendants - Appellees.

_____

Appeal from the United States District Court
For the Northern District of Mississippi

_____

October 28, 2002

Before WIENER, EMILIO M. GARZA, and PARKER, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Sandra Fay Phillips, the plaintiff, appeals the district court's judgment as a matter of law in

favor of Monroe County, Mississippi, Dr. Charles Farmer, and Dr. John Bearry (collectively "the

defendants"), in this wrongful death suit brought under 42 U.S.C. § 1983. Phillips's son, Jonathan

Phillips (the Decedent), died from testicular cancer while serving a sentence for aggravated assault in the Mississippi prison system. Phillips claims the defendants wrongfully caused the Decedent's death in violation of the Eighth and Fourteenth Amendments to the United States Constitution by refusing to provide the Decedent with necessary medical care. Additionally, Phillips brought a state law negligence claim against Monroe County. Using the standard announced in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), we affirm, because the plaintiff failed to prove the necessary causal link between the Decedent's death and the acts or omissions of the defendants. Additionally, the state law claim against Monroe County is barred by § 11-49-9(1)(m) of the Mississippi Code.

Most of the relevant facts surrounding this case are undisputed. The Decedent was diagnosed with widespread testicular cancer, including disease in the lymph nodes, abdominal cavity and lungs, in September 1996. He underwent surgery and chemotherapy, and was pronounced in remission within six months. In 1997, the Decedent's cancer returned, he completed three more rounds of chemotherapy, and was again found to be in remission. Before he was diagnosed with cancer, the Decedent was involved in a fight, for which he was later arrested and charged with aggravated assault. He pled guilty and was sentenced to 20 years imprisonment, with 15 years suspended. The Decedent began serving his sentence on May 15, 1998, when he was taken into custody by the Monroe County Sheriff's Department (the "Sheriff's Department"). Soon thereafter, he began complaining of chest pains, shortness of breath, headaches, and spitting up blood. Upon learning of his symptoms, the Decedent's family immediately contacted his oncologist, Dr. Julian Hill. Dr. Hill was located in Tupelo, Mississippi. Due to the distance between the jail and Dr. Hill's office, Dr. Hill instructed the Sheriff's Department to take the Decedent to a local physician for blood work. After

reviewing the results of the blood tests, Dr. Hill insisted the Decedent be brought to him for further tests. The Sheriff's Department complied, and the Decedent had more extensive tests, including CT scans, on June 24th. Dr. Hill found that the Decedent's cancer had reappeared in his lungs and spread to his spleen, and Dr. Hill advised the Decedent's family and the Sheriff's Department that the Decedent needed to receive salvage chemotherapy immediately and that it should begin no later than June 29th.

For reasons that are disputed and not relevant to our analysis, the Sheriff's Department sought to have the Decedent transferred to the state prison system to receive his chemotherapy treatments. It first attempted to have the sentencing court modify the Decedent's sentence so that he could be under house arrest during his treatment, but the judge found he was without jurisdiction to do so. Monroe County's Chief Deputy next contacted Dr. John Bearry, the Medical Director at the Mississippi State Penitentiary at Parchman, to determine what steps should be taken to transfer the Decedent given his medical needs. Dr. Bearry's office advised the Sheriff's Department to immediately transfer the Decedent from the Monroe County jail to the Central Mississippi Correctional Facility in Rankin County. The Decedent was transferred on June 29, and Dr. Charles Farmer, a staff physician, gave the Decedent a standard intake physical exam and referred the Decedent to the University Medical Center in Jackson for cancer treatment. The prisoner referral process is time-consuming, but Dr. Farmer managed to schedule an appointment for the Decedent for July 14.

On July 1, the Decedent suffered abdominal pain and began vomiting. He was sent to the emergency room at the University Medical Center, diagnosed with pneumonia, given antibiotics, and returned to the prison. Eight days later, the Decedent began having seizures and fell unconscious in

his cell. He was immediately transported to the University Medical Center, where he was diagnosed with a brain tumor. The Decedent's treating physicians at the Center, including Dr. James Thigpen, concluded that the testicular cancer had metastasized to the Decedent's brain, and they prescribed immediate aggressive radiation therapy. The treating physicians felt that chemotherapy would not have been an effective therapy for the brain tumor. Despite the radiation treatments, the Decedent died on July 18, 1998, and his death certificate lists the cause of death as herniation of the brain due to cancer.

Phillips subsequently brought this action on behalf of the wrongful death beneficiaries of the Decedent, alleging that his death was due to Monroe County's refusal to provide necessary medical care and failure to have policies providing for medical treatment for those prisoners in need of medical care. The complaint was later amended to include Dr. Bearry and Dr. Farmer, individually, for gross negligence and willful indifference to the Decedent's rights, alleging that they were deliberately indifferent to the Decedent's medical needs because they failed to provide him with the immediate course of chemotherapy prescribed by Dr. Hill. After Phillips presented her case, the defendants moved for judgment as a matter of law. The district court granted the motion on all grounds, finding that the defendants were not deliberately indifferent to the Decedent's medical needs, and thus did not violate his constitutional rights, and that the state law claim against Monroe County was barred because Mississippi had not waived its sovereign immunity in this circumstance.

We review a district court's ruling on a motion for judgment as a matter of law *de novo*. *Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 918 (5th Cir. 2002). Federal Rule of Civil Procedure 50(a) states that a court should render a judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary

basis for a reasonable jury to find for that party on that issue." In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court clarified the approach a court should use when granting a judgment as a matter of law. First, we must review the record "taken as a whole." 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citation omitted). Second, in reviewing all of the evidence in the record, we must "draw all reasonable inferences in favor of the nonmoving party" and "not make credibility determinations or weigh the evidence." *Id.* In other words, we must give credence to the evidence supporting the nonmovant as well as any evidence supporting the moving party that is uncontradicted, unimpeached, and not attributable to interested witnesses. *Id.* at 151.

Section 1983 provides a cause of action for persons who are subjected to the deprivation of any constitutional right by a person acting under the color of state or federal law. Although Phillips brings this suit in federal court under § 1983, she is not alleging that her constitutional rights were violated. Likewise, she does not seek relief as the personal representative of the Decedent's estate.[1]

---

[1]We have carefully reviewed the record for any evidence that this suit was brought as a survival action because such actions, which are very similar to wrongful death suits, are also available under § 1983. *See Moor v. County of Alameda*, 411 U.S. 693, 702-03 n.14, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) ("[P]ursuant to § 1988 state survivorship statutes which reverse the common-law rule may be used in the context of actions brought under § 1983."); *Brazier v. Cherry*, 293 F.2d 401, 406-07 (5th Cir. 1961) (incorporating both a state's survival statute and its wrongful death statute to provide full remedies for § 1983 violations). We pause at this point to emphasize the importance of the distinction between survival and wrongful death causes of action. If Phillips had brought this suit as a survival action, the causation analysis would be different because that type of claim redresses any constitutional injuries suffered by the Decedent *before* his death.

The record is somewhat ambiguous in this regard. The captions of both the original and amended complaint conspicuously refer to the Phillips family as wrongful death beneficiaries; the facts alleged characterize the suit as a wrongful death claim; and the parties, as well as the court, repeatedly refer to the case as a wrongful death suit. On the other hand, the types of damages sought by Phillips suggest she might have meant to bring both wrongful death and survival actions. Importantly, however, Phillips never refers to herself or any of the plaintiffs as personal representatives of the Decedent's estate, nor does she clearly assert that she is in fact the Decedent's executor or

-5-

In other words, Phillips is not suing to redress her own § 1983 claims or any constitutional claims the Decedent might have had prior to his death. Instead, Phillips sues on behalf of the wrongful death beneficiaries of the Decedent. She seeks to recover for the injuries the Phillips family suffered as a result of the Decedent's death, which, in turn, was allegedly caused by the defendants' violation of the Decedent's constitutional rights.

Wrongful death recovery under § 1983 has "generated considerable confusion and disagreement." *Rhyne v. Henderson County*, 973 F.2d 386, 390 (5th Cir. 1992) (quoting *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991)). The Supreme Court has not yet addressed this issue, and, while the circuits are divided over whether such recovery is appropriate, we have consistently allowed it. *See Rhyne*, 973 F.2d at 390-91 (summarizing the line of cases permitting such recovery); *Brazier*, 293 at 406-07.

Wrongful death statutes create new causes of action on behalf of the statutorily-designated persons in order to compensate them for the death of the decedent. *See, e.g., Thames v. Mississippi ex rel. Shoemaker*, 117 F.2d 949, 951 (5th Cir. 1941) (holding that Mississippi's wrongful death statute creates an independent cause of action). Unlike a survival action, a wrongful death action cannot be maintained unless the defendant's conduct is the cause of the decedent's death. SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION § 4:67 (4th ed., 2001 update). Accordingly, a plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both

administrator. Under Mississippi's general survivorship statute, only executors, administrators, and temporary administrators may bring a survival action. MISS. CODE ANN. § 91-7-233 (1994). Thus, without alleging the appropriate legal status, Phillips could not have brought a survival action. *See Berryhill v. Nichols*, 158 So. 470, 471 (Miss. 1935) (holding that recovery for pain and suffering of deceased allegedly caused by the negligence of doctor can only be had in suit by personal representative and not by next of kin or heirs at law). Because Phillips could only have brought this suit as a wrongful death claim, we do not address the merits of a survival action.

the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute.

We decline to address whether Phillips proved any constitutional violations on the part of the defendants because no reasonable jury could have found for Phillips on the wrongful death causation issue. Reviewing the entire record and drawing all reasonable inferences in favor of Phillips, we find the evidence is uncontradicted that, even if the defendants arranged for the Decedent to begin chemotherapy on June 29th, as recommended by Dr. Hill, such action would not have prevented the Decedent's death.

The Decedent's death certificate lists the cause of death as "brain herniation" due to the metastatic testicular cancer. At trial, the Decedent's aunt testified that the treating physician explained to the Phillips family that the Decedent's death was caused when the brain tumor swelled so much that it herniated his brain. Dr. Thigpen, a disinterested witness, testified that the Decedent's death was a direct result of the cancer's metastasis to the brain and that chemotherapy would not have influenced the brain tumor in any way. His uncontradicted testimony was that chemotherapy is not an effective treatment for brain tumors because the drugs do not pass into the brain. Phillips confirmed during her testimony that the doctors had advised the family that chemotherapy would be ineffective. Dr. Thigpen also testified that the cancer did not spread to the brain because of the delay in initiating chemotherapy. In his opinion, the cancer had spread to the brain about six months before the Decedent passed away.

It is also undisputed that Dr. Hill, the Decedent's treating physician, had only the Decedent's chest, abdomen, and pelvis scanned in late June. No CT scan was done of the Decedent's brain prior

to the onset of his seizures on July 9. Dr. Hill further admitted at trial that, even with the salvage chemotherapy he had prescribed, the Decedent could, at most, have hoped for a thirty to forty percent chance of some temporary remission of his cancer. Finally, on July 1, when the Decedent was admitted to the emergency room and diagnosed with pneumonia, the doctors at the Medical Center performed a thorough neurological exam, and the results were normal. Dr. Thigpen's undisputed testimony at trial was that no physician would have had any reason to order a brain scan or radiation therapy until appropriate symptoms appeared. The Decedent's seizure on July 9 is the only evidence in the record of such symptoms, and it was immediately after this event that the correctional facility transferred the Decedent to the University Medical Center for appropriate treatment. In sum, there is no evidence in the record of any possible medical treatment that Monroe County or the individual defendants could have provided to save the life of the Decedent.

Phillips argues in her brief that it is not necessary for her to prove chemotherapy would have saved the Decedent's life. First, she refers to the fright and anxiety both she and the Decedent suffered because of the delay in chemotherapy. In this regard, Phillips confuses the causation issue. In a survival action, damages for the Decedent's physical suffering and mental anxiety as a result of the alleged deprivation of medical care would have been appropriate. In a wrongful death context, however, no damages are available until the plaintiff has cleared the causation hurdle. *See Wilks v. Am. Tobacco Co.*, 680 So.2d 839, 842 (Miss. 1996) (holding that plaintiff's failure to prove decedent's death was caused by the wrongful acts of the defendant precludes any recovery of wrongful death damages under Mississippi's wrongful death statute).

Second, Phillips suggests that she need only prove the defendants' actions increased the Decedent's risk of death due to the cancer. She seems to refer to the "loss of chance" doctrine often

applied in medical malpractice contexts. The supporting cases she cites relate to medical malpractice suits and are not relevant here. *See Bach v. Trident Steamship Co., Inc.*, 920 F.2d 322, 327 (5th Cir. 1991) (declining to expand the "loss of chance" doctrine beyond its normal context of medical malpractice). In conclusion, we find that Phillips failed to prove that any acts or omissions on the part of the defendants caused the Decedent's death, and thus she has failed to prove the elements of her wrongful death claim.

Phillips also appeals the district court's judgment as a matter of law for Monroe County on the state law negligence claim. Mississippi waives sovereign immunity for itself and its political subdivisions in § 11-46-5 of the Mississippi Code, but subjects this blanket waiver to numerous exceptions, including those listed in § 11-46-9. In pertinent part, § 11-46-9 provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

MISS. CODE ANN. § 11-46-9(1)(m) (Supp. 2001). In *Sparks v. Kim*, 701 So.2d 1113, 1114 (Miss. 1997), the Mississippi Supreme Court applied this exception to a wrongful death claim. Thus, § 11-49-9(1)(m) bars Phillips's state law negligence claim against Monroe County.

Phillips asserts in her brief that this provision is unconstitutional on the grounds that it violates the Equal Protection clause of the Fourteenth Amendment by denying equal protection to prisoners. We find that Phillips waived the constitutionality issue by failing to present it in either her original or

amended complaint, as well as by failing to include it in the pretrial order.[2] *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) (holding that claims or issues omitted from the pretrial order are waived, even if they appeared in the complaint); *Ysleta Del Sur Pueblo v. State of Texas*, 36 F.3d 1325, 1332 (5th Cir. 1994) (holding that it is inappropriate to reach constitutional issues when a case can be decided on other grounds).

For these reasons, we find that the district court properly found for the defendants on all claims and the judgment as a matter of law is AFFIRMED.

---

[2]Nor does the constitutional challenge appear to have merit. Prisoners are not a suspect or quasi-suspect class, and the Mississippi Supreme Court has already identified a legitimate state interest for § 11-46-9(1)(m) that more than meets the burden of rationality review. *See Sparks,* 701 So. 2d at 1116 (finding that the statute protects the state's ability to hire competent prison personnel).