United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 29, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-10399

CECIL LASSETTER

Plaintiff-Appellant-Cross-Appellee

v.

STRATEGIC MATERIALS INC

Defendant-Appellee-Cross-Appellant

Appeal from the United States District Court
for the Northern District of Texas, Dallas
USDC No. 3:98-CV-2889-M

Before KING, Chief Judge, DeMOSS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Cecil Lassetter appeals the district court's order granting Defendant-Appellee Strategic Materials, Inc.'s motion for judgment as a matter of law on Lassetter's claim under the Age Discrimination in Employment Act.  We affirm.

## I.   FACTUAL AND PROCEDURAL HISTORY

### A.   Facts

Plaintiff-Appellant Cecil Lassetter worked for Defendant-Appellant Strategic Materials, Inc. ("Strategic") as a plant manager in a glass recycling plant in Midlothian, Texas.  After

---

[*]      Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

receiving complaints about Lassetter's job performance, Strategic's Vice-President, Curt Bucey, suspended Lassetter with pay to investigate these complaints.[1] Bucey investigated the complaints about Lassetter and detailed the results of his investigation in a six-page letter to Lassetter. The letter expressed Bucey's concerns about Lassetter's: inappropriate treatment of subordinates, disloyalty to Strategic, absence from an annual plant managers' meeting, failure to produce quality control reports, and abandonment of a temporary assignment at Strategic's Houston plant.[2]

Lassetter replied with a very brief letter where he generally denied the allegations and accused Strategic of attempting to discharge him on the basis of his age. Lassetter wrote: "The allegations contained in the Letter are untrue, unsubstantiated, unwarranted and show[] the company's intent to force me out in violation of the Age Discrimination Act."

Bucey then terminated Lassetter's employment with Strategic. In his letter discharging Lassetter, Bucey wrote: "You are hereby terminated for cause, the cause being the complaints and issues with your job performance raised in my letter of March 5, your lack of response to the same, and the apparent breach of your duty of loyalty to the company as plant manager in efforts to divert suppliers from the plant."

---

[1] Prior to that suspension, Lassetter had not been formally disciplined or suspended, though his supervisors testified that they had previously met with Lassetter informally to discuss problems with his performance.

[2] This letter was viewed by the jury in a significantly redacted form.

At the time of his discharge, Lassetter was fifty-eight years old. Lassetter's replacement was forty-six-year-old Joe Schumacher. Schumacher was replaced a few months later by thirty-four-year-old Roy Benavides.

## B.   Procedural History

Lassetter sued, claiming intentional discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2000), and intentional infliction of emotional distress under Texas law. The district court dismissed the intentional infliction of emotional distress claim for failure to state a claim.

The district court then held a three-day jury trial on Lassetter's ADEA claim. During the trial, Lassetter sought to prove his claim of age discrimination by showing that Strategic's stated reasons for discharging him were a pretext for age discrimination. Strategic moved for judgment as a matter of law ("JMOL") at the close of Lassetter's evidence and at the close of all the evidence. The district court denied both motions for JMOL without prejudice. The jury returned a verdict for Lassetter, finding that Strategic willfully discriminated against him on the basis of his age.[3] Strategic again moved for JMOL. The district court granted Strategic's motion for JMOL because it found that Lassetter had not provided sufficient evidence for the jury to determine that each of Strategic's stated reasons for discharging him was pretextual.

---

[3]    The jury awarded Lassetter $103,144 in back pay. Also, in an advisory finding requested by the court, the jury indicated that it would award $109,838 in front pay.

Lassetter now appeals, arguing that the district court erred in granting Strategic's motion for JMOL because he provided sufficient evidence for the jury to find that each of the stated reasons for discharging him was pretextual.  Strategic adds an issue on appeal, arguing that this court should not consider Lassetter's appeal because his failure to include a trial transcript in the appellate record violates Federal Rule of Appellate Procedure 10(b)(2).[4]

## II.  STANDARD OF REVIEW

We review a district court's grant of judgment as a matter of law de novo.  See, e.g., West v. Nabors Drilling USA, Inc., 330 F.3d 379, 383 (5th Cir. 2003).  Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  FED. R. CIV. P. 50(a).  There is no legally sufficient evidentiary basis when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict."  Rubenstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000) (internal citation and quotation marks omitted), cert. denied, 532 U.S. 937 (2001).  As we have explained:

> In Reeves v. Sanderson Plumbing Products, Inc., the Supreme Court clarified the approach a court should use when granting a judgment as a matter of law.  First, we must

---

[4]     Strategic also cross-appeals "the lack of a conditional ruling on Strategic's motion for a new trial."  Strategic provided no argument on this point in its brief.  Because we affirm the district court's JMOL in favor of Strategic, we do not address the cross-appeal.

4

> review the record taken as a whole.  Second, in reviewing all of the evidence in the record, we must draw all reasonable inferences in favor of the nonmoving party and not make credibility determinations or weigh the evidence. In other words, we must give credence to the evidence supporting the nonmovant as well as any evidence supporting the moving party that is uncontradicted, unimpeached, and not attributable to interested witnesses.

Phillips ex rel. Phillips v. Monroe County, Miss., 311 F.3d 369, 373 (5th Cir. 2002) (internal citations and quotation marks omitted), cert. denied, 123 S. Ct. 2274 (2003).  Thus, we review the record as a whole, drawing all reasonable inferences in favor of Lassetter without making any credibility assessments.

### III.  DISCUSSION

**A.  Whether Lassetter's failure to include a transcript in the record bars this appeal**

Initially, we must address whether Lassetter's initial failure to include the trial transcript in the record on appeal precludes us from reviewing his appeal on the merits.  Under the Federal Rules of Appellate Procedure, "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."  FED. R. APP. P. 10(b)(2).  Further, "If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded . . ."  FED. R. APP. P. 10(e)(2)(C). Failure to include a transcript in the record is grounds for dismissal; however, the decision whether to dismiss an appeal due to lack of a transcript is within our discretion.  See, e.g.,

5

RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1289 (5th Cir. 1995); Coats v. Pierre, 890 F.2d 728, 731 (5th Cir. 1989).

In this case, we will not dismiss Lassetter's appeal due to lack of a transcript. Though the transcript was not in the record initially, Lassetter recognized the mistake and supplemented the record with the trial transcript on July 29, 2002, approximately five months before oral argument. Lassetter stated in his brief that he requested that the transcript be included in the record and he claims that the transcript was omitted "by error or accident," FED. R. APP. P. 10(e)(2)(C). We have been given no reason to doubt Lassetter's good faith. Further, Strategic has not been prejudiced significantly by the initial omission of the transcript because Strategic had a copy of the transcript available for its use in briefing this appeal. The transcript is now in the record so that we may properly assess Lassetter's claims on appeal. For these reasons, we elect to hear the appeal.

## B. Whether the district court erred in granting judgment as a matter of law

The ADEA prohibits an employer from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (2000). A plaintiff must prove intentional discrimination to establish a violation of the ADEA, which he can do by presenting either direct or circumstantial evidence. See, e.g., Price v. Marathon Cheese Corp., 119 F.3d 330, 336 (5th Cir. 1997).

In cases where the plaintiff alleges discriminatory

6

treatment based on circumstantial evidence, as is the case here,[5] we follow the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green. See 411 U.S. 792, 802-05 (1973); see also, e.g., West, 330 F.3d at 384 (applying this framework to ADEA discrimination cases). Initially, the plaintiff must set forth a prima facie case of discrimination. See, e.g., McDonnell Douglas, 411 U.S. at 802; West, 330 F.3d at 384. To establish a prima facie case of discriminatory discharge based on age, a plaintiff must prove: (1) he was a member of a protected class (over the age of forty); (2) he was qualified for his position; (3) he was discharged; and (4) he was replaced by someone outside of the protected class, someone younger, or was otherwise discharged because of his age.[6] West, 330 F.3d at 384.

The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for discharging the plaintiff. See, e.g., McDonnell Douglas, 411 U.S. at 802-03; West, 330 F.3d at 384-85. The employer's burden is one of production; the burden of persuasion remains with the plaintiff at all times. See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); West, 330 F.3d at 384-85. If the employer meets its burden of production, the inference of age discrimination created by the prima facie case disappears. See, e.g., West, 330 F.3d at 385.

The plaintiff then has the opportunity to demonstrate that

---

[5] Lassetter concedes that there is no direct evidence of age discrimination in this case.

[6] Strategic concedes that Lassetter made out a prima facie case of age discrimination.

the employer's stated reasons are not its true reasons but instead are a pretext for discrimination and to ultimately prove, by a preponderance of the evidence, that he has been the victim of intentional discrimination.  See, e.g., McDonnell Douglas, 411 U.S. at 804-05; West, 330 F.3d at 385.  In attempting to prove that the employer's reasons for discharge were pretextual, the plaintiff must put forward evidence rebutting each of the proferred reasons.  See, e.g., Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001), cert. denied, 535 U.S. 1078 (2002).

When a case has been fully tried, we do not rely on the McDonnell Douglas burden-shifting scheme, but simply ask whether the record contains sufficient evidence to support the jury's ultimate findings.  See, e.g., West, 330 F.3d at 385-86; Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). Hence, the key issue in this appeal is whether Lassetter provided sufficient evidence for a reasonable jury to find that Strategic's stated reasons for discharging him were pretextual, thereby precluding JMOL.

At trial, Strategic set forth five reasons why it discharged Lassetter.  The reasons are: (1) Lassetter's disloyalty to Strategic; (2) Lassetter's disrespectful behavior toward subordinates and toward management; (3) Lassetter's abandonment of his post during a temporary assignment at Strategic's Houston plant; (4) Lassetter's failure to take inventory in a timely manner and to implement a quality assurance system; and (5) Lassetter's absence from Strategic's annual meeting for plant

8

managers.  Lassetter attempted to disprove these reasons through his testimony and the testimony of three former Strategic employees.[7]  Strategic only defends the first four of its proffered reasons on appeal.

Lassetter has not presented sufficient evidence for a reasonable jury to conclude that all of Strategic's stated reasons for Lassetter's discharge were pretextual.  At trial, there was conflicting evidence about the first two of Strategic's proferred reasons – Lassetter's disloyalty and his treatment of subordinates and management.  The jury clearly chose to credit Lassetter's version of events and not Strategic's.  But even if the jury refused to credit the testimony Strategic offered as to the first two reasons, there is uncontradicted evidence in support of Strategic's third and fourth reasons.  We consider each of these reasons in turn.

As its third reason for discharge, Strategic cited Lassetter's abandonment of a temporary post at Strategic's Houston plant.  At trial, Bucey testified that he gave Lassetter the responsibility for managing Strategic's Houston plant for a ninety-day trial period and that Lassetter simply stopped reporting for work at the Houston plant after about three weeks.  Lassetter testified that the trial period was only to last thirty days, but he admitted that he left the plant after only three

_____

[7]    Lassetter also introduced evidence that two of his former supervisors, Tom Vossman and Rich Smithson, made age-related comments about him.  The district court determined that these stray remarks were not probative evidence of discrimination because they did not satisfy the four-part test set forth in Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996).  Lassetter does not appeal this ruling.

9

weeks without giving Bucey any prior notice. Lassetter stated that he told his direct supervisor, Rich Smithson, that he was not interested in becoming plant manager at the Houston plant during the thirty-day trial period. But, Lassetter admits that he did not tell Smithson about his decision to leave the Houston plant until a week after he left the plant and that, as a result, the plant was left unsupervised.

Even if the jury believed that Lassetter did not wish to assume management of the Houston plant, Lassetter provided no evidence to rebut the fact that he left the Houston plant before the end of the thirty-day trial period without notifying management or finding a replacement manager for the plant. Lassetter argues that he provided sufficient evidence for the jury to find that his discharge was pretextual because, though Lassetter abandoned the Houston plant in the summer of 1997, he was not disciplined for this episode until he was suspended (and ultimately discharged) in the spring of 1998. But, the uncontested facts do not support Lassetter's argument. Bucey testified that soon after Lassetter left the Houston plant, Strategic flew Lassetter to Houston to meet with Bucey and Smithson to discuss his abandonment of the Houston plant and his performance generally. Lassetter admitted that he made this trip. On the uncontested facts, then, Strategic provided a non-discriminatory reason for discharging Lassetter.

As its fourth reason for discharge, Strategic cited Lassetter's failure to complete monthly inventory reports and his failure to implement a quality control system. At trial, Bucey

testified about the importance of keeping proper inventory and maintaining quality control. Bucey stated that Lassetter rarely made inventory reports at the end of the month when they were due and did not implement Strategic's quality control system at the Midlothian plant. Lassetter never addressed these specific complaints, either before his discharge or at trial. Instead, Lassetter pointed to the testimony of Roy Benavides, a plant manager after Lassetter, who stated that he managed the Midlothian plant "just the way Cecil [Lassetter] was running it," and that he was never suspended or discharged. Because Benavides did not testify about whether he produced inventory reports or whether he implemented a quality control system, his testimony was too general to create a fact issue as to whether Strategic's proffered reason was pretextual. Again, on the uncontested facts, Strategic has set forth another non-discriminatory reason for Lassetter's discharge.

In summary, Lassetter's <u>prima facie</u> case is weak, and there is no direct evidence of discrimination. Lassetter attempts to show discrimination by showing that Strategic's reasons for discharge were pretextual, but there is uncontroverted evidence supporting two of Strategic's nondiscriminatory reasons: that Lassetter abandoned his temporary post at the Houston plant and that he was unwilling to follow Strategic's inventory and quality assurance practices. Because Lassetter did not provide evidence suggesting these two reasons were pretextual, he cannot prove intentional discrimination. We thus find that there is no legally sufficient evidentiary basis for a reasonable jury to

11

find for Lassetter on his age discrimination claim.  The district court's grant of Strategic's motion for JMOL was proper.

## IV.  CONCLUSION

For the foregoing reasons, the district court's order granting Strategic's motion for JMOL is AFFIRMED.  Costs shall be borne by the Appellant.