United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 17, 2005**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

———————————

m 04-20125

———————————

EL AGUILA FOOD PRODUCTS, INC.; LA RANCHERA FOOD PRODUCTS, INC.;
LA RENIA, INC.; ANITA'S MEXICAN FOODS CORP.; LA ESPIGA DE ORO, INC.;
GILBERT MORENO ENTERPRISES, INC.,
DOING BUSINESS AS LA MONITA;
LA FAVORITA INCORPORATED; MEX-PRO, INC.; LA TAPATIA TORTILLERIA, INC.;
MARBROS LLC,
DOING BUSINESS AS EL RANCHO;
FOOD-O-MEX CORP.,
DOING BUSINESS AS EL DORADO MEXICAN FOOD PRODUCTS;
R AND M PARTNERSHIP,
DOING BUSINESS AS CAPISTRAN TORTILLAS;
WALTER MOLINA,
DOING BUSINESS AS DOS MOLINOS TORTILLA HEAVEN;
CALIFORNIA MEXICAN FOODS, INC.; MEXICAN FOOD SPECIALITIES, INC.; SANITARY
TORTILLA MANUFACTURING, LTD.;
JFCW, INC.,
DOING BUSINESS AS CALIENTE DISTRIBUTORS;
AND
LOMPOC TORTILLA SHOP,

Plaintiffs-Appellants,

VERSUS

GRUMA CORPORATION, ET AL.,

Defendants,

GRUMA CORPORATION,
INDIVIDUALLY DOING BUSINESS AS MISSION FOODS CORPORATION;
GRUMA CORPORATION TEXAS;
MISSION FOODS CORPORATION;
GUERRERO MEXICAN FOOD PRODUCTS, INC.;
AND
AZTECA MILLING LP,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
m 4:03-CV-427

_____

Before DAVIS, SMITH, and
DEMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The plaintiffs in this antitrust suit, seventeen manufacturers of tortillas, appeal a take-nothing judgment entered in favor of Gruma Corporation ("Gruma"), a manufacturer of tortillas and related food products, two of its corporate divisions, and a related entity. Because the plaintiffs failed to offer evidence of damages and causation sufficient to sustain a rational judgment in their favor, we affirm.

I.

The nature of this suit and the conduct alleged to be anticompetitive are set forth in the district court's opinion,[1] so we only briefly summarize them here. Plaintiffs challenge Gruma's conduct downstreamSSits efforts to obtain shelf and display space in retail outlets and to induce retailers to promote and advertise its tortillas. Specifically, plaintiffs challenge Gruma's use of marketing agreements with retailers whereby Gruma pays up-front fees to retailersSSso-called "slotting fees"SSor provides other price reductions or financial incentives to obtain (and in part manage) shelf space, advertising, and product promotion, as well as Gruma's conduct as it acts as a "Category Captain," a designation given a particular

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *El-Aguila Food Prods., Inc. v. Gruma Corp.*, 301 F. Supp. 2d 612 (S.D. Tex. 2003).

product manufacturer by a retailer enabling the manufacturer to assist the retailer in display and promotional operations.[2] Plaintiffs charge Gruma with exclusive dealing in violation of section 1 of the Sherman Act and section 3 of the Clayton Act, monopolization and attempted monopolization in violation of section 2 of the Sherman Act, price discrimination in violation of the Robinson-Patman Act, and violations of state antitrust laws.

Before trial, Gruma moved for summary judgment, contending that plaintiffs could not, as a matter of law, establish any antitrust violations. Gruma also moved to exclude, on *Daubert* grounds,[3] the plaintiffs' designated expert witnesses on damages and causation. The district court did not rule on Gruma's summary judgment motion before trial; it entered an order indicating the motion would be carried with trial. The court summarily denied the motions to exclude but reserved the right to reconsider the question on a renewed objection at trial.

The case proceeded to trial before a jury. After plaintiffs presented their fact witnesses, they offered their damages expert, Kenneth McCoin, to opine on the profits allegedly lost as a consequence of Gruma's challenged conduct. Gruma renewed its *Daubert* objection, and after a complete proffer and extended *voir dire* examination, the court sustained the objection and excluded McCoin from testifying. Plaintiffs then called their expert on causation and antitrust injury, Gregory Gundlach, to opine on the causal link between Gruma's challenged conduct and the damages claimed; Gruma renewed its objection to his testimony, and after another proffer and examination, the court excluded Gundlach from testifying.

The plaintiffs having no admissible evidence of antitrust damages or causation on which a verdict could be based, the court dismissed the jury. Gruma moved for judgment as matter of law and moved the court to consider its pending motion for summary judgment. Thereafter, in a published opinion, the court articulated its reasons for excluding the experts and granted a take-nothing judgment in favor of Gruma, concluding that plaintiffs' claims for money damages and injunctive relief fail as a matter of law.

II.

Because the district court granted Gruma's motion for summary judgment and its motion for judgment as a matter of law, our review is *de novo*, and we may affirm on any basis supported by the record.[4] Private antitrust liability under § 4 of the Clayton Act requires a plaintiff to show (1) a violation of the antitrust laws, (2) the fact of damage, and (3) some indication of the amount of damage. *E.g.*, *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 675-76 (5th Cir. 1982). The fact of damage requirement is one of causation; the plaintiff must show that the defendant's unlawful conduct was a material cause of injury to its business. If the requisite causal link is proven, "a more relaxed burden of proof obtains for the amount of damages than would

---

[2] *See* FEDERAL TRADE COMMISSION STAFF REPORT, SLOTTING ALLOWANCES IN THE RETAIL GROCERY INDUSTRY 12-13 (Nov. 2003).

[3] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[4] *See Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002); *Phillips ex rel. Phillips v. Monroe County*, 311 F.3d 369, 373 (5th Cir. 2002); *LLEH, Inc. v. Wichita County, Tex.*, 289 F.3d 358, 364 (5th Cir. 2002).

justify an award in other civil cases." *Eleven Line, Inc. v. N. Tex. State Soccer Ass'n*, 213 F.3d 198, 207 (5th Cir. 2000). Though relaxed, the standard for proving the quantum of damages is not without bounds, for antitrust damages may not be determined by guesswork or speculation; "we must at least insist upon a 'just and reasonable estimate of the damage based on relevant data.'" *Lehrman v. Gulf Oil Corp.*, 464 F.2d 26, 46 (5th Cir. 1972) (quoting *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946)).[5]

## III.

We do not pause to consider the district court's conclusion that the plaintiffs failed, as a matter of law, to establish any harm to competition rather than competitors in any properly defined market and thus any violation of the antitrust laws. Instead, affirmance is compelled on more narrow grounds: the failure of proof on damages and causation.

## A.

To prove actual damages, plaintiffs chiefly relied on McCoin's damages model. He used a yardstick measure of lost profits whereby he compared plaintiffs' sales history with sales data and growth projections from trade association studies of national tortilla markets; he applied a uniform gross margin to each of the plaintiffs' firmsSSthe major assumption being that, absent Gruma's illegal conduct, each of the plaintiffs would have performed to the rate of the market as a whole. *See El-Aguila*, 301 F. Supp. 2d at 624 n.14. The district court found this model wholly unreliable insofar as it attributed all of the measured lost profits to the alleged antitrust injury and irrelevant insofar as it was not in any respect anchored to the specific agreements or marketing practices challenged by plaintiffs. *See id.* at 624-26.

A district court has broad discretion in deciding to admit or exclude expert testimony,[6] and excluding McCoin's testimony was anything but an abuse of discretion. Indeed, McCoin made no effort to demonstrate the reasonable similarity of the plaintiffs' firms and the businesses whose earnings data he relied on as a benchmark.[7] Similarly, McCoin did not consider whether the plaintiffs' firms were even capable of handling the excess capacity the projected rates of return necessarily entail. Moreover, by characterizing all variances between the trade association earnings data and plaintiffs' respective earnings as "lost profits," no allowance was made for losses caused by any other factorSSincluding, for example, reductions in shelf space attributable to other dominant firms or new entrants into the relevant markets, the plaintiffs' own failure to compete for shelf space on the terms sought by retailers, and their lack of capacity or efficiency relative to other firms.

In any event, even if McCoin's testimony

---

[5] Plaintiffs do not brief any salient differences in the requirements under state law, opting to tie the fate of their state law claims to their federal law claims.

[6] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip.*, 394 F.3d 320, 325 (5th Cir. 2004).

[7] *Cf. Eleven Line*, 213 F.3d at 208 ("An antitrust plaintiff who uses a yardstick method of determining lost profits bears the burden of demonstrating the reasonable similarity of the business whose earnings experience he would borrow."); *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974) ("Although allowances can be made for differences between the firms, the business used as a standard must be as nearly identical to the plaintiff's as possible.").

had been admitted, it would not have provided a sufficient basis on which the jury could have arrived at a reasonable and just estimate of actual damages.[8] And the plaintiffs did not present additional evidence sufficient to prove damages. Because plaintiffs failed to offer substantial evidence on which a principled award of money damages could be based, the district court did not err in granting judgment in favor of Gruma on the claims for money damages.

B.

Nor did plaintiffs provide sufficient evidence to demonstrate that Gruma's conduct was a material cause of actual or threatened damage (much less of the sort the antitrust laws were designed to prevent).[9] To prove causation, plaintiffs relied primarily on Gundlach, whose view was that Gruma's marketing agreements and practice of paying slotting fees resulted in exclusivity and permitted preferential shelf-space and display positions in a manner inconsistent with sales and thus restricted competitors from the market.

The district court did not question Grundlach's qualifications but excluded his testimony because his opinions amounted to abstract conclusions not adequately grounded in the facts of the case. *See El-Aguila*, 301 F. Supp.

2d at 620-24. We cannot say this was an abuse of discretion, for the record indicates that Gundlach did not examine sales data from retailers in the relevant markets to determine whether space allocation among the various brands was disproportionate to their sales, nor did he attempt to tie space allocation to retailers with which Gruma had marketing agreements or paid slotting fees, or to quantify either the extent of exclusivity Gruma allegedly obtained or the extent of market foreclosure allegedly caused by Gruma's challenged conduct.[10] Moreover, Grundlach failed adequately to account for alternative causes of plaintiffs' reduction in shelf space, most notably their failure to compete for shelf space by offering similar incentives to reduce the net price paid for tortillas by retailers as well as the growing success of retailers' own private lines of tortillas.

Beyond their designated expert, plaintiffs point to circumstantial evidence and argue that the jury could have inferred causation. Though jury inferences of causation are in some instances permissible, "the required causal link must be proved as a matter of fact and with a fair degree of certainty." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 317 (5th Cir. 1978). And this is especially so where plaintiffs admittedly lost shelf space (and thus sales) because of salient factors distinct from the challenged conduct such as increasing competition in the tortilla category and their refusal even to seek shelf space in some retail

---

[8] *Cf. MCI Communications v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1162 (7th Cir. 1983) ("When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damages. This is precisely the type of speculation or guesswork not permitted for antitrust jury verdicts.") (internal marks omitted).

[9] *See* 15 U.S.C. § 26; *Cargill, Inc. v. Monfort, Inc.*, 479 U.S. 104, 113 (1986).

[10] *Cf. Joiner*, 522 U.S. at 146 (stating that a district court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

outlets where Gruma's products were sold.[11]

In sum, because plaintiffs failed to present substantial evidence demonstrating that Gruma's conduct was a material cause of its actual or threatened injury as well as evidence on which a jury could base a reasonable award of money damages, their claims fail as a matter of law. Accordingly, the judgment in favor of defendants is AFFIRMED.

---

[11] *Cf. Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 485 (5th Cir. 2000) (requiring tighter demonstration of causation where other factors contributed to plaintiff's losses).